Rachel E. Matteo-Boehm (SBN 195492)
rachel.matteo-boehm@bclplaw.com
Katherine Keating (SBN 217908)
katherine.keating@bclplaw.com
Jonathan G. Fetterly (SBN 228612)
jon.fetterly@bclplaw.com
BRYAN CAVE LEIGHTON PAISNER LLP
3 Embarcadero Center, 7th Floor
San Francisco, CA 94111
Telephone:   (415) 675-3400
Facsimile:     (415) 675-3434

Attorneys for Plaintiff
COURTHOUSE NEWS SERVICE

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| Courthouse News Service,<br><br>Plaintiff,<br><br>vs.<br><br>Neal I. Taniguchi, in his official capacity as Court Executive Officer/Clerk of the San Mateo County Superior Court,<br><br>Defendant. | Case No.<br><br>**COMPLAINT FOR  DECLARATORY AND INJUNCTIVE RELIEF** |

1

2          Plaintiff Courthouse News Service ("Courthouse News" or "CNS"), by and through its

3   undersigned attorneys, alleges the following in support of its Complaint for Injunctive and

4   Declaratory Relief against Defendant Neal I. Taniguchi, in his official capacity as Court Executive

5   Officer / Clerk of the San Mateo Superior Court ("Defendant").

6                                      **INTRODUCTION**

7          1.      Courthouse News brings this action to challenge Defendant's policy and practice of

8   withholding access to new civil unlimited complaints e-filed at San Mateo Superior Court ("SMSC")

9   until after processing by court staff.  This policy and practice results in regular and pervasive delays

10  in the ability of Courthouse News and others to read and report on those complaints, including

11  numerous weeks in which SMSC withheld access to ***more than 60%*** of new e-filed civil complaints

12  for at least one court day, with many complaints withheld for as many as two or more court days.

13  These delays are unnecessary and easily avoidable, as demonstrated by the timely access provided

14  by federal and state courts across the country – including the Superior Courts in neighboring

15  Monterey and Santa Clara Counties – using alternatives that are readily available to SMSC.

16         2.      The First Amendment provides the press and public with a presumptive right of

17  timely access to newly-filed civil complaints that attaches when the complaint is filed.  *Courthouse*

18  *News Service v. Planet*, 947 F.3d 581, 585 (9th Cir. 2020) ("*Planet III*").  In *Planet III*, the Ninth

19  Circuit recognized that timely access to new civil complaints is essential to ensure that news of civil

20  disputes reaches the public "while it is fresh[,]" when it is most likely to become the subject of

21  public discussion.  *Id*.  It is also essential "to accurate and fair news reporting of civil disputes, and is

22  thus vital to the public's ability to discuss what is happening in an important branch of government.

23  *Id.* (citations and quotations omitted).  Delayed access inhibits that discussion, and is tantamount to a

24  denial of access.

25         3.      News coverage operates in a daily cycle where news events, including newly filed

26  complaints, occur during the day and are reported that afternoon and evening, after which

27  newsmakers and reporters sleep, only to start the cycle again the next day.  Where news is delayed

28

1

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF                    Case No. _____
USA.602534225.13/OER

1    until the next day or longer, it is devalued by the delay and is less likely to be reported, because it

2    becomes "old news".

3       4.  Traditionally, at courts across the country, new complaints were available for review

4    by the end of the day so they could be reviewed by journalists who visited the courthouse to report

5    on the day's newsworthy complaints.  Complaints were filed in paper, and intake clerks would set

6    aside the new complaints for journalist review as they came across the intake counter.  This was true

7    at San Mateo Superior Court ("SMSC") in 2006, when Courthouse News first started covering the

8    court.  At that time, SMSC kept a bin behind the counter in which it kept fresh complaints for review

9    by the reporters who came to the courthouse to report on them.  Courthouse News and other

10   members of the press could thus review new civil complaints by the end of the day on which they

11   were filed.

12      5.  On June 1, 2020, SMSC implemented mandatory e-filing for all new civil unlimited

13   complaints, except those filed by *pro se* litigants.  Since then, delays in access at SMSC have been

14   regular and pervasive, including numerous weeks in which SMSC withheld access to ***more than***

15   ***60%*** of new e-filed civil complaints for at least one court day, with many complaints withheld for as

16   many as two or more court days.  These delays in access are the result of SMSC's policy and

17   practice of withholding access to new e-filed complaints until after they have been administratively

18   processed by court staff.  This causes delay because new complaints are filed into SMSC's e-filing

19   system and then sit in an electronic queue, where they are withheld from public view while waiting

20   to be processed by court staff.

21      6.  The delays in access experienced by Courthouse News at SMSC are unnecessary and

22   easily avoidable.  Courts throughout California and across the nation provide the press and public

23   timely access to new e-filed complaints through means readily available to SMSC.

24      7.  The vast majority of federal courts and many state courts configure their e-filing and

25   case management systems to automatically release nonconfidential civil complaints to the public at

26   large the moment the court receives them, both online through PACER and at the courthouse

27   through public access terminals.

28

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF        Case No.

1        8.      A growing number of state courts – including Los Angeles, Santa Clara, Monterey,

2 Santa Barbara, Fresno, and Kern County Superior Courts in California – provide the same on-receipt

3 access but take a slightly different approach.  They configure their e-filing and case management

4 systems to allow credentialed users to see new e-filed complaints that sit in the court's electronic

5 queue, while they await processing by court staff.  By doing so, these courts continue the tradition of

6 providing access to new complaints after they have crossed the clerk's intake counter, and before

7 they are docketed, enabling the press to review complaints by the end of the day on which they are

8 filed.

9        9.      Notably, SMSC uses e-filing and case management software provided and maintained

10 by Tyler Technologies ("Tyler").  Numerous other courts in California, including Monterey and

11 Santa Clara Superior Courts, use the same Tyler e-filing and case management systems to provide

12 timely, pre-processing access to new civil complaints through what are commonly called "review

13 queues."  SMSC could likewise provide timely, pre-processing access to new civil complaints

14 through a review queue, as demonstrated by its sister courts, or through other practicable alternatives

15 used by other state and federal courts.  However, SMSC refuses to do so, and delays in access to new

16 civil complaints at SMSC are regular and pervasive due to defendant's policy and practice of

17 withholding access to new e-filed complaints until after administrative processing.

18      10.     The analysis of a claim alleging a violation of the First Amendment right of access

19 typically involves a two-step process.  The first step is to determine whether, as a general matter,

20 there is a First Amendment right of access to civil complaints.  If the answer to that question is

21 "yes," the court proceeds to the second step, which is to determine if the restrictions on access – in

22 this case, SMSC's policies and practices that lead to delays in access – satisfy "rigorous" scrutiny.

23 *See Planet III*, 947 F.3d at 589-97 (discussing and applying two-step process established by *Press-*

24 *Enterprise Co. v. Superior Court* ("*Press-Enterprise II*"), 478  U.S. 1 (1986)).

25      11.     In *Planet III*, the Ninth Circuit applied this two-step process to the Ventura Superior

26 Court clerk's policy and practice of withholding access to new civil complaints until after

27 administrative processing.  Applying the "experience" and "logic" test of *Press-Enterprise II*, the

28 Ninth Circuit addressed and conclusively resolved the first step by holding that the press has a

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF                                 Case No.

1    qualified right of timely access to newly-filed civil complaints that attaches when the complaint is

2    filed, *i.e.*, when the complaint is received by the court. *Id.* at 585, 588, 591.

3           12.     Turning to the second step, *Planet III* determined that the clerk had failed to

4    "demonstrate … that there is a 'substantial probability' that its [asserted] interest[s]" to support

5    withholding access to new civil complaints until after administrative processing "would be impaired

6    by immediate access, and … that no reasonable alternatives exist to 'adequately protect' that

7    government interest." *Id.* at 596 (citing and quoting *Press-Enterprise* II, 478 U.S. at 14). The

8    Ventura Superior Court clerk's policy of withholding access to new civil complaints until after

9    administrative processing thus failed both prongs of the *Press-Enterprise II* test and violated

10   Courthouse News' First Amendment right of timely access to new civil complaints. *See id.* at 596-

11   600.

12          13.     Shortly after the Ninth Circuit issued *Planet III*, the Eastern District of Virginia ruled,

13   following a bench trial, that under the First Amendment, the public and press generally have a

14   "contemporaneous right of access" to newly-filed civil complaints, and that "contemporaneous"

15   means "on the same day as filing, insofar as practicable." *Courthouse News Service v. Schaefer*, 440

16   F. Supp. 3d 532, 559 (E.D. Va. 2020).

17          14.     The existence of readily-available alternatives means that SMSC cannot justify its

18   policy or practice of withholding access to new civil complaints until after processing. SMSC's

19   policy and practice of delaying access to new civil complaints despite available less restrictive

20   alternatives violates Courthouse News' First Amendment right of timely access, just as the policies

21   and practices of the court clerks in *Planet III* and *Schaefer* did. Courthouse News seeks declaratory

22   relief and an injunction prohibiting that policy and practice.

23          15.     The COVID-19 pandemic has brought serious challenges to the courts of California.

24   One of their effects has been to magnify the difference between those courts, like Monterey, Fresno

25   and Santa Clara Superior Courts, that have used readily available technology in a manner consistent

26   with their commitment to providing timely access to court records, and SMSC, which has not.

27   Despite emergency orders and closures, courts that provide pre-processing or on-receipt access to

28   new complaints, whether through generally available websites or through a review queue, saw no

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF                                                    Case No.

1   disruption in public access to new civil complaints and other civil filings even as the pandemic took

2   its toll on many court operations.  As Courthouse News recently argued to the Ninth Circuit,

3   technology should illuminate the halls of government, not darken them.

4

5                                    **JURISDICTION AND VENUE**

6           16.     Courthouse News' claims arise under the First and Fourteenth Amendments to the

7   United States Constitution and the Civil Rights Act, Title 42 U.S.C. §§ 1983-1988.  This Court has

8   subject matter jurisdiction under 28 U.S.C. §§ 1331 (federal question), 1343 (civil rights) and 2201

9   (declaratory relief).  Defendant is subject to personal jurisdiction in this judicial district at the time

10  this action is commenced.

11          17.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b) because Defendant

12  resides in California and is employed in this district, and because a substantial part of the events or

13  omissions giving rise to Courthouse News' claims occurred in this district.

14                                          **PARTIES**

15          18.     Courthouse News is a nationwide news service founded almost 30 years ago out of a

16  belief that a great deal of news about civil litigation went unreported by traditional news media, a

17  trend that has only increased in the last decade. Courthouse News now employs approximately 240

18  people, most of them editors and reporters, covering state and federal trial and appellate courts in all

19  50 states in the United States.

20          19.     Defendant Taniguchi is the Court Executive Officer/Clerk of SMSC and is sued in

21  that official capacity.  The Court Executive Officer/Clerk is responsible for, among other things, the

22  administration of court records.

23          20.     Acting in his official capacity, Defendant, and those acting under his direction and

24  supervision, is directly involved with and/or responsible for the delays in access to new complaints

25  experienced by Courthouse News and other members of the press, which acts reflect the official

26  policy and practice of the clerk's office as a whole.

27          21.     Defendant's actions, as alleged in this Complaint, are under the color of California

28  law and constitute state action within the meaning of the Fourteenth Amendment to the United States

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF                                            Case No.

1  Constitution and 42 U.S.C. § 1983.  On information and belief, Defendant's primary place of

2  employment is in San Mateo County, California.

3       22.    Defendant is sued in his official capacity only.  Courthouse News seeks relief against

4  Defendant as well as his agents, assistants, successors, employees, and all persons acting in concert

5  or cooperation with him or at his direction or under his control.

6                               **FACTUAL ALLEGATIONS**

7       23.    Courthouse News has covered SMSC since 2006.  After the Ninth Circuit's decision

8  in *Planet III*, Courthouse News notified Defendant that SMSC's practices and policies denied timely

9  access to many new civil unlimited complaints, for at least one day and sometimes for several days.

10  Despite a highly practicable alternative, Defendant refused to change his policies, and the denial of

11  timely access continues to this day.

12  **A.     Courthouse News' News Reporting Activities**

13       24.    Courthouse News offers its readers a variety of publications.  Its New Litigation

14  Reports contain original, staff-written summaries of significant new civil petitions or complaints,

15  and are sent to subscribers via e-mail each evening. In California, Courthouse News publishes 15

16  civil litigation reports, including the "Silicon Valley Report," which includes coverage of new

17  litigation in SMSC and Santa Clara Superior.

18       25.    Among Courthouse News' other publications is a monthly newsletter, the

19  *Entertainment Law Digest*, as well as the *Daily Brief*, which covers published, nationwide appellate

20  rulings, including all U.S. Supreme Court and federal circuit decisions, as well as significant rulings

21  from the federal district courts. Courthouse News also publishes a freely-available website,

22  www.courthousenews.com, featuring news reports and commentary, which is read by roughly

23  30,000 people every weekday. The website functions much like a print daily newspaper, featuring

24  staff-written articles from across the nation that are posted throughout each day, and rotated on and

25  off the page on a 24-hour news cycle.

26       26.    Courthouse News has been credited as the original source of reporting on various

27  topics by a wide range of publications, including: *The Mercury News, ABA Journal*, ABC News, *The*

28  *Atlantic*, *Austin American Statesman*, Black Christian News Network, *California Bar Journal*, CBS

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF                                  Case No.

News, *The Christian Science Monitor*, The Daily Beast, *The Dallas Morning News*, Forbes, Fox News, *The Guardian*, The Hill, *Houston Chronicle*, The Huffington Post, *Long Island Press*, *Los Angeles Times*, *Mother Jones*, National Public Radio (NPR); NBC News, *New York Daily News*, *New York Magazine*, *The New York Times*, *The Orange County Register*, Politico, *Rolling Stone*, *Salt Lake City Tribune, San Antonio Express-News*, Slate, *The Telegraph* (UK), *The Wall Street Journal*, *The Washington Post*, *The Washington Times*, *Women's Health Policy Report*, United Press International (UPI), *USA Today*, *U.S. News and World Report* and the YouTube news channel. American, Canadian, and New Zealand radio shows have also interviewed Courthouse News reporters.

27. Courthouse News has more than 2,200 subscribers nationwide, including law firms, law schools, government offices and news outlets such as: The Associated Press, *Austin American-Statesman The Atlanta Journal Constitution*, *The Boston Globe*, Buzzfeed, CNN, *The Dallas Morning News*, *Detroit Free Press*, International Consortium of Investigative Journalists, Fox Entertainment Group, *Honolulu Civil Beat, Las Vegas Review Journal, Los Angeles Business Journal, Los Angeles Times*, North Jersey Media Group, *Pacific Coast Business Times, Portland Business Journal, St. Paul Business Journal, The Salt Lake Tribune, The San Jose Mercury News, San Antonio Express News*, *Tampa Bay Business Journal*, *The Wall Street Journal*, Variety, Walt Disney Company and Warner Bros.

28. In California, the Courthouse News litigation reports cover unlimited jurisdiction civil complaints – complaints, focusing on those against business institutions and public entities. Courthouse News reporters do not cover family law matters, name changes, probate filings, most mortgage foreclosures, or collection actions against individuals unless the individual is famous or notorious. For larger courts, such as SMSC, reports are emailed to subscribers each evening.

29. Courthouse News does not seek to review or report on the tiny fraction of new civil complaints that are statutorily confidential or accompanied by a motion to seal for a judicial determination of whether the complaint should be confidential. Through its Tyler "Odyssey" case management and e-filing systems, SMSC can automatically segregate confidential e-filings at intake so they are not publicly available.

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF                                    Case No.

1    30.    Courthouse News publishes 16 New Litigation Reports on California courts, which

2    cover civil actions filed in all four federal district courts as well as superior courts in Alameda,

3    Contra Costa, Fresno, Kern, Los Angeles, Monterey, Orange, Placer, Riverside, Sacramento, San

4    Bernardino, San Diego, San Francisco, San Joaquin, San Luis Obispo, Santa Cruz, San Mateo, Santa

5    Barbara, Santa Clara, Solano, Sonoma, Stanislaus and Ventura Counties.  Courthouse News covers

6    SMSC in its *Silicon Valley Report*, which has about 136 subscribing institutions.

7    31.    To prepare the New Litigation Reports and identify new cases that may warrant a

8    website article, Courthouse News' reporters visit their assigned court each workday so they can

9    review all the complaints filed with the court that day to determine which are of interest to

10   Courthouse News' readers.  Given the nature of the coverage in the New Litigation Reports and its

11   other news publications, including its website, any delay in the ability of a reporter to obtain and

12   review new complaints necessarily holds up the reporting on factual and legal controversies for

13   subscribers and readers.

14   **B.    A First Amendment Right of Access Attaches To Civil Complaints When the Court**

15   **Receives Them.**

16   32.    In *Planet III*, the Ninth Circuit held there is a qualified First Amendment right of

17   timely access to newly-filed civil complaints that arises when the complaints are "filed with the

18   court."  947 F.3d at 594.

19   33.    In reaching this holding, the Ninth Circuit observed that it had "long presumed a First

20   Amendment 'right of access to court proceedings and documents'" and that this right:

21       exists…to enable free and informed discussion about important issues of the day and
         governmental affairs.  Thus, '[t]he news media's right of access to judicial

22       proceedings is essential not only to its own free expression, but also to the public's.'
         …  'The free press is the guardian of the public interest, and the independent judiciary

23       is the guardian of the free press.'  These values hold especially true where, as here,
         the impetus for CNS's efforts to obtain newly filed complaints is its interest in timely

24       reporting on their contents.

25   *Planet III*, 947 F.3d at 589-90 (internal citation and quotations omitted).

26   34.    In rejecting Planet's argument that the First Amendment right of access does not

27   attach until after judicial action, the Ninth Circuit recognized:

28       CNS's reporting on complaints must be timely to be newsworthy and to allow for
         ample and meaningful public discussion regarding the functioning of our nation's

8

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF                                        Case No.

court systems. … [A] ban on reporting news 'just at the time [the] audience would be most receptive' would be effectively equivalent to 'a deliberate statutory scheme of censorship.' In other words, the public interest in obtaining news is an interest in obtaining contemporaneous news. … 'The newsworthiness of a particular story is often fleeting. To delay or postpone disclosure undermines the benefit of public scrutiny and may have the same result as complete suppression.' … [T]hat 'old' news is not worthy of, and does not receive, much public attention has been widely recognized. …[T]he need for immediacy of reporting news is 'even more vital in the digital age,' where timeliness is measured in terms of minutes or seconds.

*Id.* at 594 (citations and quotations omitted).

35.     As *Planet III* also recognized, limitations on access to newly-filed civil complaint are subject to rigorous scrutiny. *Id*. at 595-96. That is, access "may be restricted only if closure is essential to preserve higher values and is narrowly tailored to serve those interests." *Id*. at 595 (quotations omitted). While *"[s]ome* reasonable restrictions resembling time, place, and manner regulations that result in incidental delays in access are constitutionally permitted," such delay-causing restrictions are *only* permitted "where they are content-neutral, narrowly tailored and necessary to preserve the court's important interests in the fair and orderly administration of justice." *Id.* at 585 (emphasis added).

## C.     Delays in Access to New Civil Complaints at SMSC Infringe Upon Courthouse News' First Amendment Right of Access.

36.     When Courthouse News began covering SMSC in 2006, SMSC provided access to newly-filed civil complaints to reporters on the day of filing. New complaints were consistently and reliably available for review by reporters in a timely fashion, by the end of the day on which they were received for filing. This was also the practice in many other counties in California and in federal and state courts across America.

37.     However, since SMSC's adoption of mandatory e-filing on June 1, 2020, access delays have become pervasive. Unlike most federal district courts and many state courts, SMSC does not make newly-filed complaints available upon receipt by the court. Instead, SMSC withholds the complaints until after court staff have processed them. As a direct result, there are once again significant delays between the e-filing of a new complaint and when it is made available to the press and the public.

9

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF                                      Case No.

38.     Courthouse News has engaged SMSC numerous times in recent months in an attempt to resolve SMSC's denial of timely access, but those efforts have been unsuccessful.  SMSC's policy and practice of withholding complaints until after processing remains in effect to this day, with resulting delays that SMSC could easily avoid.

39.     Prior to commencing this action, Courthouse News tracked and compiled access data for civil unlimited complaints e-filed at SMSC, noting delays between when each complaint was received by the court for filing and when the court first made each complaint available to the public.

40.     As noted above, since June 1, 2020, delays in access at SMSC have been regular and pervasive, including numerous weeks in which SMSC withheld access to ***more than 60%*** of new e-filed civil complaints for at least one court day, with many complaints withheld for as many as two or more court days.

**D.     SMSC's Policies and Practices Causing Delays Are Not Narrowly Tailored.**

41.     Courthouse News' experiences at many state and federal courts across the nation demonstrate the ease with which courts can provide timely access to new e-filed civil complaints.

42.     Historically, before e-filing, reporters covering the courts could review and report on newly filed, paper civil complaints on the day of filing by looking at them at the courthouse, typically at the end of each court day.  This access generally occurred via a media bin or box or pile – at SMSC, the bin behind the intake counter holding new civil complaints – where new complaints were reviewed on the day of filing, generally at the end of the day.

43.     E-filing makes it even easier for courts to provide timely access to new complaints. Instead of basic intake work being done by clerks at an intake window, that work is now done by e-filing software, which filers use to enter case information and whatever minimum submission requirements the court specifies before submitting their e-filings to the court.  Based on the case designation supplied by the filer, the e-filing software can then sort the new, nonconfidential complaints into a review queue that serves the same function as the physical bin where the intake clerk used to put new paper complaints for review by the press.  However, instead of sitting in a physical bin next to an intake window, new e-filed complaints sit in an electronic queue.  In those courts that provide access to their review queues, the end result is that the press can report on new

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF                                              Case No.

1  complaints shortly after they are filed, with busy clerks attending to the processing of those

2  complaints as their schedules allow.

3        44.     Federal district courts were among the first to move to e-filing, and the vast majority

4  have taken the tradition of timely access that existed in paper into the electronic world and carried it

5  forward into the electronic world.  The largest group of federal courts, including the northern district

6  of California, provide access by automatically assigning a permanent case number upon receipt of

7  new civil complaints, which become public immediately, at all hours of the day and on all days of

8  the week.  Other federal courts, including the Eastern District of California, automatically assign a

9  temporary case number which allows the press and public to review the new complaints on receipt.

10  Still others, such as the districts of Delaware and West Virginia, send new cases into an electronic

11  queue with only a common, generic number assigned, and they can then be reviewed by the press.

12  Under all of these systems, new complaints are available contemporaneously to the public and the

13  press, mostly commonly through the PACER public access system, without a clerk first reviewing

14  them or completing other post-filing clerical tasks.

15        45.     Many state courts have also moved to e-filing, using a variety of electronic filing and

16  case management platforms – some developed in-house, and others supplied by vendors.  Some

17  (including courts in Alabama, Connecticut, Hawaii, and Utah) have set up their e-filing and public

18  access systems following the federal district court model.  That is, new e-filed complaints flow

19  automatically onto public access terminals and remotely online as they are filed with the courts.

20        46.     Other state courts provide pre-processing access to the court's queue of for new

21  nonconfidential complaints.  These review queue courts allow credentialed members of the press to

22  access new e-filed complaints as soon as they are received by the court, and without the delays

23  caused by withholding them for administrative processing.  These courts include state courts in

24  Georgia, Nevada, and the California Superior Courts of Fresno, Kern, Los Angeles, Monterey, Santa

25  Barbara and Santa Clara.

26        47.     In California, the Superior Courts in Fresno, Kern, Monterey, Santa Barbara and

27  Santa Clara counties all use the same e-filing and case management platform as SMSC:  Odyssey

28  eFileCA by Tyler Technologies.  However, unlike SMSC, these other California courts provide

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF                                  Case No.

1  timely access through a review queue feature in the Odyssey system, allowing new e-filed public

2  complaints to be viewed while they wait for court staff to process them.

3       48.    Courthouse News has repeatedly asked SMSC to take advantage of Odyssey's review

4  queue functionality, and to cease the practice of denying access to new e-filed complaints until after

5  they have been processed by court staff.  To date, Defendant has refused Courthouse News' request,

6  and SMSC continues to withhold access to new e-filed complaints until after processing.

7       49.    As a result, Courthouse News continues to experience significant delays in access to

8  new civil unlimited complaints at SMSC.

9                                    **COUNT ONE**

10                **Violation of U.S. Const. Amend. I and 42 U.S.C. § 1983**

11      50.    Courthouse News incorporates the allegations of Paragraphs 1-49 herein.

12      51.    Defendant's actions under color of state law, including without limitation his policy

13 and practice of withholding newly filed civil unlimited complaints from press and public view until

14 after administrative processing, and the resulting denial of timely access to new civil unlimited

15 complaints upon receipt for filing, deprive Courthouse News, and by extension its subscribers, of

16 their right of access to public court records secured by the First Amendment to the U.S. Constitution.

17      52.    The presumption of access to new civil complaints, which arises when those

18 complaints are filed, at SMSC may be restricted only if closure is essential to preserve higher values

19 and is narrowly tailored to serve those interests.  *Planet III*, 947 F.3d at 594-95 (citing *Press-*

20 *Enterprise II*).  For Defendant's no-access-before-process-and-review policy to "survive *Press-*

21 *Enterprise II*'s two-prong balancing test" (*i.e.*, "rigorous" scrutiny), Defendant "must demonstrate

22 that there is a 'substantial probability' that its [asserted] interest[s]… would be impaired by

23 immediate access, and second, that no reasonable alternatives exist to 'adequately protect' that

24 government interest."  *Planet III*, 947 F.3d at 596.  Defendant cannot satisfy this test.

25      53.    Courthouse News has no adequate and speedy remedy at law to prevent or redress

26 Defendant's unconstitutional actions, and will suffer irreparable harm as a result of Defendant's

27 violation of its First Amendment rights.  Courthouse News is therefore entitled to a declaratory

28

12

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF                                                   Case No.

1   judgment and a permanent injunction to prevent further deprivation of the First Amendment rights

2   guaranteed to it and its subscribers.

3   **PRAYER FOR RELIEF**

4       WHEREFORE, Courthouse News prays for judgment against Defendant as follows:

5       1.      A declaratory judgment pursuant to 28 U.S.C. § 2201 declaring Defendant's policies

6   and practices that knowingly affect delays in access to newly filed civil unlimited complaints,

7   including, inter alia, his policy and practice of denying access to complaints until after administrative

8   processing, are unconstitutional under the First and Fourteenth Amendments to the United States

9   Constitution because these policies and practices constitute an effective denial of timely public

10  access to new civil complaints, which are public court records to which the First Amendment right

11  of access applies.

12      2.      A permanent injunction against Defendant, including his agents, assistants,

13  successors, employees, and all persons acting in concert or cooperation with him, or at his direction

14  or under his control, prohibiting him from continuing his policies and practices that deny Courthouse

15  News timely access to new civil unlimited jurisdiction complaints, including, *inter alia*, his policy

16  and practice of denying access to complaints until after administrative processing.

17      3.      An award of costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988; and

18      4.      All other relief the Court deems just and proper.

19
20  Dated:    January 15, 2021                    BRYAN CAVE LEIGHTON PAISNER LLP

21                                                By:    */s/ Jonathan G. Fetterly*_____
                                                         Jonathan G. Fetterly
22                                                       Attorneys for Plaintiff
                                                         COURTHOUSE NEWS SERVICE
23

24

25

26

27

28

13

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF                                Case No.